UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TABITHA DUNSON,

     Plaintiff

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

Civil Action No. 06-15030

District Judge Paul D. Borman
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Tabitha Dunson brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income Benefits. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On November 17, 1999, Plaintiff filed an application for Supplemental Security Income Benefits ("SSI"), alleging an onset date of October 6, 1996 as a result of a crushed ankle bone (Tr. 37). Following a July 13, 2001 administrative hearing, Administrative Law

Judge ("ALJ") William J. Musseman issued an administrative decision on August 1, 2001 determining that Plaintiff retained the ability to perform a range of sedentary work (Tr. 161). On March 25, 2003, Plaintiff filed a second application for SSI, again alleging disability as of October 6, 1996 (Tr. 179). On October 3, 2005, ALJ Richard Sasena conducted an administrative hearing in Flint, Michigan (Tr. 306). Plaintiff, represented by Mikel Lupisella, testified, as did Vocational Expert ("VE") Timothy Shaner (Tr. 310-325, 325-328). On January 20, 2006, ALJ Sasena determined that Plaintiff was capable of a significant range of unskilled sedentary work, and therefore not disabled (Tr. 23). On October 19, 2006, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on November 9, 2006.

## BACKGROUND FACTS

Plaintiff, born May 27, 1969, was age 37 when ALJ Sasena issued his decision (Tr. 37). She attended special education classes and quit school after completing eighth grade, later receiving a GED (Tr. 57, 326). Plaintiff alleges disability due to October 1996 ankle and leg fractures (Tr. 51).

### A.    Plaintiff's October 3, 2005 Testimony[1]

Plaintiff testified that she had not worked since October 6, 1996 when she fractured ankle and leg bones (Tr. 310). She stated that the fractures, as well as knee, back, and upper shoulder problems, prevented her from performing her janitorial job, adding that cold

---

[1]The transcript from the original hearing, held July 13, 2001 is not included with the administrative transcript.

weather exacerbated her knee condition (Tr. 310).  She indicated that her back and shoulder problems, which began after when her ankle was fractured were caused by arthritis (Tr. 311).  Plaintiff also stated that she experienced asthma upon overexertion, requiring the use of an inhaler (Tr. 311).

Plaintiff testified that she lived with her husband, three daughters, and grandson (Tr. 312-313).  She reported that she received medical insurance coverage through the Department of Human Services, as well as $617 a month and food stamps from the state (Tr. 313).  She indicated that she had previously been placed in a state work program but had been dismissed because of her inability to meet the lifting requirements of the work (Tr. 313).  She stated that she had been exempted from the work program as a result of her physical limitations (Tr. 314).

Plaintiff testified that she could lift a maximum of only 20 pounds as a result of ankle weakness (Tr. 313).  She indicated that her work abilities were further compromised by the medication side effect of drowsiness  (Tr. 314).  Plaintiff, stating that she quit school before completing ninth grade, alleged that her lack of "focus" created comprehension difficulties (Tr. 314).  She testified that she had reapplied for the janitorial position following her injury, but was denied employment because of the "long period of time" between her injury and her application for rehiring (Tr. 315).  Plaintiff opined that she was ineligible for any other work because of a social phobia caused by childhood abuse (Tr. 315-316).  She testified that she had not sought mental health treatment until receiving a prescription for Prozac "a couple of days" before the hearing (Tr. 316).

Plaintiff reported that damp weather exacerbated her ankle pain, characterizing her pain level, at worst, as a "10" on a scale of 1 to 10 (Tr. 317). Plaintiff, testifying that her condition was "a whole lot worse[]" since reapplying for benefits in 2003, stated that she took Darvocet, Naprosyn, and Robaxen for pain and Trenol for blood circulation (Tr. 318). She reported the side effects of fatigue and drowsiness as a result of Darvocet and Robaxen (Tr. 319). Plaintiff alleged medication-induced fatigue obliged her to recline up to three hours each day, adding that she had not taken medication prior to the hearing (Tr. 319).

Plaintiff stated that she could bathe and dress herself as long as she was sitting down, adding that she took breaks between household tasks to avoid fatigue (Tr. 319). She acknowledged that she continued to cook for her family on a regular basis, reporting that because her ankle was affected by warm weather, she avoided cooking in the summer (Tr. 320). Plaintiff stated that climbing and descending stairs caused knee pain, reporting further that her knee problems were "there a couple of days and then . . . gone" (Tr. 320). She also reported stiffness upon bending and stooping (Tr. 321). Plaintiff estimated that she experienced back and shoulder pain "[j]ust every now and then" (Tr. 321). She alleged that since her 2003 application, her back and shoulder condition had worsened (Tr. 322).

Plaintiff reported that she played pool daily and continued to crochet and play cards on an occasional basis (Tr. 322). She testified that a typical day consisted of eating breakfast, taking her medication, and napping, reporting that she watched television four hours a day (Tr. 323). She estimated that she could walk up to four blocks but would require a cane for the return trip (Tr. 323). She testified that she could lift up to twenty pounds (Tr.

324). When asked if she continued to drive, Plaintiff stated that she "did it once," but ended up wrecking her husband's car (Tr. 324).

### B. Medical Evidence[2]

### 1. Treating Sources

A March 1999 opinion letter by R. Kuffa, D.O., states that Plaintiff continued to receive treatment for an October 1996 ankle fracture (Tr. 104). Kuffa found that Plaintiff "should not stand for more than two hours without resting (sitting) for two hours," concluding that Plaintiff "should not be involved [in] a work program" before undergoing a consultative examination scheduled for May 1999 (Tr. 102, 104).

In May 1999, Orthopedist Nathaniel C. Narten, M.D., examined Plaintiff, noting continued ankle stiffness following the October 1996 fracture (Tr. 82). Narten recommended surgery for the "removal of hardware" as well as an anterior spur (Tr. 82). Plaintiff underwent surgery in July 1999 without complications (Tr. 81, 84-85). Narten noted in August 1999 that Plaintiff's ankle felt "a little bit better," but reported that she showed signs of "some arthritis in the area" (Tr. 83). He recommended therapy for range of motion and strengthening exercises (Tr. 83). In October 1999 Narten, finding the presence of "moderate arthritis," prescribed an ankle brace, concluding that he "would support her ...quest for disability" (Tr. 87).

---

[2]A portion of the medical records discussed in this section predate ALJ Musselman's August 1, 2001 adjudication of Plaintiff's first application and thus cannot be considered in the present claim. The earlier records have been included here for background purposes only.

In May 2000, extremity venous studies showed no evidence of "venous incompetency or valvular disease" (Tr. 283-284).   In December 2001, Dr. Kuffa prescribed Darvocet for continued ankle pain (Tr. 273).   In October 2002, pulmonary function tests showed an oxygen saturation rate of 98 percent (Tr. 256).   Dr. Charles Ellsworth noted that current studies compared to those performed four years earlier showed that Plaintiff's asthma condition was essentially static   (Tr. 256).   In October 2003, Dr. Kuffa prescribed Prednesone, Naprosyn, an inhaler, and renewed Plaintiff's prescription for Darvocet (Tr. 269).   The same month, Orthopedist Todd A. Sandrock, D.O., noting that Plaintiff complained of worsening ankle pain as well as knee problems, recommended the renewed use of an ankle brace, along with nutritional supplements and exercise (Tr. 258-259). Sandrock advised that in the event conservative treatment was unsuccessful, "consideration may be made for tibiotalar fusion" (Tr. 259).   In March 2005, Plaintiff received treatment for a right finger fracture (Tr. 263).   In October 2005, Dr. Kuffa completed a "disability" questionnaire, opining that Plaintiff was limited to lifting less than 10 pounds on an occasional basis (Tr. 305).   Kuffa found further that Plaintiff was limited to standing or walking for less than two hours in an eight-hour work day (Tr. 305).   He indicated that Plaintiff experienced mild limitations in the ability to push or pull and should avoid exposure to "dust or extremes of temperature" (Tr. 305).   He concluded by opining that Plaintiff's limitations would "likely disrupt a regular job" for two hours each day (Tr. 305).

### 2.  Consultive and Non-examining Sources

In March 2000, Samiullah H. Sayyid, M.D., performed a consultive examination of

Plaintiff on behalf of the SSA (Tr. 119-126). Sayyid noted that Plaintiff, 30, had been "found to be positive" for rheumatoid arthritis by her treating physician (Tr. 119). Plaintiff reported arm and leg stiffness, but did not exhibit "rheumatoid nodules or deformities yet," stating further that she had used a right ankle brace since August 1999 (Tr. 119). Sayyid also noted that Plaintiff, a smoker, experienced exercise-induced asthma for which she used a Combivent inhaler (Tr. 119). Plaintiff denied hospitalizations for asthma (Tr. 119). She reported that she had remained unemployed since breaking her ankle in October 1996 (Tr. 119). With the exception of a right leg limp, a review of systems showed normal results (Tr. 120-121). Sayyid noted that Plaintiff had been working for less than a year before quitting work as a result of the ankle fracture (Tr. 121). Range of motion ("ROM") studies showed right ankle limitations but otherwise normal results (Tr. 123).

The same month, B.D. Choi, M.D., performed a Physical Residual Functional Capacity analysis of Plaintiff's medical records, finding that she retained the ability to lift 20 pounds occasionally and ten pounds frequently; the ability to stand, sit, or walk for about six hours in an eight-hour workday, and an unlimited ability to push and pull (Tr. 133). Choi found further that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl on an occasional basis (Tr. 134). The report found the absence of manipulative, visual, communicative, or environmental limitations, commenting that Plaintiff's allegations of disability were only partially supported by treating records (Tr. 137). In April 2004, a Psychiatric Review Technique found the absence of a severe mental impairment (Tr. 142, 145). Plaintiff's functional limitations as a result an affective disorder were deemed minimal

or nonexistent (Tr. 140).

In May 2003, Bret Bielawski, D.O., conducted a consultive examination of Plaintiff on behalf of the SSA (Tr. 240-243). Plaintiff, now 33, reported that she continued to smoke, despite experiencing asthma (Tr. 240). She denied "morning stiffness" as a result of arthritis, but reported taking Trental and Prednisone (Tr. 240). Plaintiff complained of hand and finger "weakness and tingling" (Tr. 240). Bielawski found no "evidence of synovitis " in her hands or knees (Tr. 242). He noted normal motor strength, muscle tone, and a full range of motion (Tr. 242).

In June 2003, a Residual Functional Capacity Assessment found that Plaintiff was limited to lifting ten pounds; standing or walking for two hours in an eight-hour workday; and sitting for six (Tr. 245). The report found further that Plaintiff retained an unlimited ability to push and pull, and a complete absence of postural, manipulative, visual, communicative, or environmental restrictions (Tr. 246-248). The report found that Plaintiff's asthma was "controlled" (Tr. 245).

### C. VE Testimony

VE Timothy Shaner classified Plaintiff's past relevant work as a janitor as unskilled at the medium level of exertion (Tr. 326).

The ALJ then posed the following hypothetical question:

"[I]f an individual [Plaintiff's] education level and age – if they were limited to sedentary work, but had to avoid concentrated exposure to humidity, heat, and cold. And also had to avoid activities that required the use of the right lower extremity. Were limited to simple, routine, repetitive tasks. With those limitations are there jobs that exist in the regional economy that such an

individual could perform?"

(Tr. 327).

The VE found that given the above limitations, Plaintiff could perform the work of an inspector (1,800 positions in the lower peninsula of Michigan), assembler (12,000), surveillance system monitor (1,600), and information clerk (1,800) (Tr. 327). The VE testified further that if the hypothetical question were expanded to include "the additional limitations of a sit-stand option, and also a need to avoid concentrated exposure to dust, fumes, or gasses, . . . . only occasional climbing, balancing, stooping, kneeling, crouching, and crawling," as well as limiting Plaintiff to "frequent (as opposed to *constant*) reaching, handling, and pushing, and pulling," the above job conclusions would remain unchanged (Tr. 327). The VE concluded by indicating that his testimony did not "conflict with the Dictionary of Occupational Titles or . . . companion publications" (Tr. 328).

### D.  The Administrative Decisions

#### 1.  The August 1, 2001 Decision

ALJ William J. Musseman found that although Plaintiff's "status/post right ankle fracture with residual arthritis and asthma" were severe impairments based on the Regulations in 20 C.F.R. § 404.1520(c), neither condition met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation 4 (Tr. 157, 160).

The ALJ determined that although Plaintiff was unable to perform her past relevant

work as a janitor, she retained the following residual functional capacity ("RFC"):

> "[A] significant range of unskilled, sedentary work that is performed primarily from a seated position. However, the claimant should avoid activity that requires the use of foot and leg control with her right lower extremity or exposure to temperature extremes and damp/wet conditions"

(Tr. 158, 161).

ALJ Musseman adopted VE Melody Henry's finding (not contained in the administrative transcript) that Plaintiff could perform the work of a bench assembler (8,450 jobs), inspector (2,175), and packer (1,025) (Tr. 160). He found Plaintiff's allegations of limitation "not totally credible," noting that although after July 1999 surgery, Plaintiff was instructed to followup with treatment on an "as needed basis," the record did not show a "significant number of follow up visits . . . with regard to her right ankle condition" (Tr. 158). The ALJ also observed that Plaintiff continued to groom herself, shop, cook, and perform housework (Tr. 158).

### 2. January 20, 2006 Decision

ALJ Sasena found that although Plaintiff experienced the severe impairments of post right ankle fracture with residual arthritis and asthma which were "severe" based on the Regulations in 20 C.F.R. § 404.1520(c), neither condition met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation 4 (Tr. 21, 23). The ALJ determined that Plaintiff retained the following RFC:

> "to lift 10 pounds occasionally. She is able to sit six hours in an eight-hour work day. She can occasionally climb stairs, balance, stoop, kneel, crouch and

crawl. She is limited to simple, routine, repetitive tasks. She must avoid concentrated exposure to humidity, heat and cold; avoid concentrated exposure to dust, fumes and gases. She must avoid activities that require the use of the right lower extremity. She can frequently handle, reach, push and pull."

(Tr. 22, 23). Adopting VE Shaner's job numbers, the ALJ found that Plaintiff could perform the work of an inspector, assembler, surveillance system monitor, and information clerk (Tr. 22, 23). The ALJ rejected Plaintiff's allegations of disability, noting that she continued to play pool, care for her own personal needs, and perform household chores (Tr. 21).

Citing Social Security Acquiescence Ruling 98-4(6); *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the ALJ noted that Plaintiff's second application for benefits alleged disability as of October 6, 1996 despite the fact that ALJ Musselman had found her not disabled from October 6, 1996 through August 1, 2001 (Tr. 22). ALJ Sasena observed that "the administrative law judge may not make a different finding in adjudicating a subsequent disability claim (with an unadjudicated period arising under the same title of the Act as the prior claim) unless new and additional evidence or changed circumstances provide a basis for a different finding." Tr. 22; *Drummond, supra*. Nonetheless, the ALJ, accounting for the difference between ALJ Musselman's August 1, 2001 RFC and his January 20, 2006 RFC, found that the presence of "additional medical evidence" supporting the newer determination (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary*

*of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985). Substantial evidence

is more than a scintilla but less that a preponderance. It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated*

*Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of

review is deferential and "presupposes that there is a 'zone of choice' within which

decision makers can go either way, without interference from the courts." *Mullen v.*

*Bowen,* 800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc). In determining whether the evidence

is substantial, the court must "take into account whatever in the record fairly detracts

from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497

(6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may

look to any evidence in the record, regardless of whether it has been cited by the ALJ.

*Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## <u>ANALYSIS</u>

### A. The Treating Physician

Plaintiff contends that ALJ Sasena conducted an inadequate analysis of Dr. Kuffa's October 2005 opinion by failing to discuss Kuffa's finding that Plaintiff's condition would oblige her to miss up to two hours of work each day. *Plaintiff's Brief* at 10 *citing to* Tr. 21, 305. Plaintiff argues that regardless of record evidence contradicting Kuffa's finding, the flawed "treating physician" analysis deprived her of "a mandatory procedural protection" pursuant to *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546 (6th Cir. 2004).

*Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) states that "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ
> must apply certain factors--namely, the length of the treatment relationship and

the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

Moreover, regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, *Wilson* at 544, *citing* 20 C.F.R. § 404.1527(d)(2) holds that the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544; *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999).

Contrary to Plaintiff's claim, the administrative decision includes an adequate discussion of Dr. Kuffa's opinion. The fact that the ALJ omitted mention of Kuffa's finding that Plaintiff's condition would oblige her to miss up to 40 hours of week each month does not invalidate his treating physician analysis. In conformance with 20 C.F.R. § 404.1527(d)(2) as interpreted by *Wilson, supra*, the ALJ permissibly discounted Kuffa's opinion by noting that his finding that Plaintiff was precluded from lifting more than 10 pounds stood at odds with Plaintiff's own testimony that she could lift up to twenty pounds (Tr. 21 *citing to* 313). The ALJ found further that the October 2005 disability opinion contradicted Plaintiff's statement that she could stand or sit for up to two hours (Tr. 21 *citing to* 324). Although 20 C.F.R. § 404.1527(d)(2) mandates that the ALJ "give good reasons"

for rejecting the opinion of a treating source, it does not require that the ALJ parse every sentence of the source's opinion. *See Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)§ 404.1527(d)(2)(the ALJ's rejection of the treating physicians' statements because they were "inconsistent with the overall evidence of record" was a "factual determination within his discretion")(internal citations omitted). Likewise here, ALJ was entitled to reject Kuffa's opinion upon finding that it was inconsistent with Plaintiff's testimony.[3]

### B. Credibility

Plaintiff also contends that the ALJ impermissibly discounted her allegation that constant drowsiness as a result of medication side effects precludes full time employment. *Plaintiff's Brief* at 11. Plaintiff argues that the ALJ failed to address "[t]he type, dosage, effectiveness, and side effects" of her pain medication as required by 20 C.F.R. §404.1529(c)(3)(iv). *Plaintiff's Brief* at 12.

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th

---

[3]Plaintiff's related argument that the ALJ overlooked Kuffa's February 15, 2005 "disability" opinion also fails. *Plaintiff's Brief* at 10, citing to Tr. 264. The February 2005 treating notes state as follows: "[R]enew restrictions due to patient unable to work greater than 30 hours a week." However, the record does not include medical evidence to support this conclusion. Further, Plaintiff's testimony suggests that this restriction was specifically prescribed to exclude her from a state-run work program ("Work First") which required participants to "lift up to 75 pounds" (Tr. 313).

Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401.  However, ALJ's decision must be based on specific reasons for the findings of credibility, supported by substantial evidence in the record.  *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001).

An ALJ's credibility determination is guided by SSR 96-7p, which further describes a two-step process for evaluating symptoms.  *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.  1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  Second, SSR 96-7p directs as follows:

> "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

*Id.*   If applicable, C.F.R. 404.1529(c)(3) requires the ALJ to consider  the "type, dosage, effectiveness, and side effects" of medication when considering a claimant's allegations.

I disagree with Plaintiff's contention that the ALJ conducted an inadequate credibility analysis.  Citing directly to C.F.R.  404.1529(c)(3), ALJ Sasena found that "the intensity, persistence and functionally limiting effects of the symptoms alleged by the claimant are not fully consistent with the objective medical and other evidence."  The ALJ supported this conclusion by noting that Plaintiff continued "to care for her own personal needs, does some household chores and is able to play pool and/or cards for two hours at a time" (Tr. 21).

Plaintiff's acknowledgment that she cooks for her family, performs household chores for her family, and continues to engage in enjoyable pastimes on a regular, as opposed to intermittent, basis stands at odds with her allegation that medication side effects preclude all gainful employment. While Plaintiff faults the ALJ for excluding the term "side effects" from his two-paragraph credibility determination, an earlier portion of the administrative decision acknowledges Plaintiff's allegation of medication side effects (Tr. 20).

Further and more importantly, substantial evidence strongly supports the ALJ's determination that Plaintiff's allegations, including limitations as a result of medication side effects, were "not totally credible" (Tr. 23). A consultive examination performed on behalf of the SSA in May, 2003 observed that Plaintiff "walks normally without the use of an assistive device," exhibiting "immediate, recent and remote memory" and "normal concentration" (Tr. 241). The examining physician further noted "a full range of motion of all joints," and normal motor strength and muscle tone (Tr. 242). Although Plaintiff claimed that she lacked "focus," she admitted that she continued to handle her own finances (Tr. 214). Plaintiff's claim that chronic ankle problems and pain medication incapacitate her to the extent that she is unemployable is further undermined by the lack of aggressive treatment. Although in October 2003, Dr. Ellsworth advised a tibiotalar fusion of Plaintiff's ankle in the event more conservative treatment failed, no evidence suggests that Plaintiff underwent the fusion procedure, allowing for the inference that ankle problems created a lesser degree

of limitation than alleged[4] (Tr. 259).  An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986).  Here, the credibility determination, well supported by record evidence, does not provide a basis for remand.

### C.  The Hypothetical Question

Plaintiff's argument that the hypothetical question posed to the VE did not account for all her workplace limitations is intertwined with the ALJ's credibility determination. Citing *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), Plaintiff contends that the question's omission of critical limitations as a result of medication side effects invalidated the VE's finding that she could perform a significant range of sedentary work.  *Plaintiff's Brief* at 6.  She argues that the VE's job findings, later adopted by the ALJ, taint the ultimate administrative determination that she was capable of sedentary work.  *Id.*

---

[4]The Court is mindful that SSR 96-7p also states that the ALJ

"must not draw any inferences about . . . the failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"

However, despite the fact that Plaintiff has been unemployed for several years, her failure to pursue aggressive treatment cannot be attributed to financial limitations.  The record suggests that Plaintiff sought and received routine medical treatment on a frequent basis (Tr. 263, 268, 272-274, 287-288).

In *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987), the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted). The ALJ's credibility determination impacts the composition of a hypothetical question. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

As discussed thoroughly in Section B., the ALJ was entitled to compose a hypothetical question omitting Plaintiff's allegations that side effects from her medication required her to sleep for several hours a day. The deference allotted the credibility determination extends to the hypothetical question's composition. *Stanley, supra,* 39 F.3d at 118-119. Here, the ALJ's choice of hypothetical limitations (and her omission of others) stands well supported by record evidence. Likewise, for the reasons set forth in Section A., the ALJ was not required to incorporate Kuffa's assessment into his question to the VE. Significantly, the hypothetical question, which formed the basis for the RFC found in the administrative opinion, in some respects imposed greater restrictions on work activity then those alleged by Plaintiff. Although Plaintiff testified that she was capable of lifting up to 20 pounds, suggesting that she was actually capable of performing exertionally light work, the hypothetical question limits her to sedentary work (Tr. 327).

In closing, the Court notes that its non-disability finding is not intended to trivialize Plaintiff's limitations as a result of her October 1996 ankle injury. However, the administrative findings, both procedurally and substantively sound, fall well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  October 19, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 19, 2007.


S/Gina Wilson
Judicial Assistant